UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSEPH CAPORICCI, VICTORY
ENVIRONMENTAL SERVICES, LTD.,
VICTORY SERVICES SPA, LTD., EASTERN
GENERAL CONTRACTING SERVICES, LTD.,

          MEMORANDUM AND ORDER

         Plaintiffs,          CV 05-5764

      -against-          (Wexler, J.)

NASSAU COUNTY POLICE DEPARTMENT,
DETECTIVE NICHOLAS OCHINO, LT.
MICHAEL H. MCGOVERN, EDWARD
REILLY, AS SHERIFF OF THE COUNTY
OF NASSAU, SWALM STREET REALTY,
LLC., and PAT SIMONE,

         Defendants.
------------------------------------------------------------X

APPEARANCES

    GORDON & GORDON
    BY: PETER S. GORDON, ESQ..
    Attorneys for Plaintiffs
    108-18 Queens Blvd.
    Forest Hills, New York 11375

    LORNA B. GOODMAN, ESQ., NASSAU COUNTY ATTORNEY
    BY: RALPH J. REISSMAN, ESQ.
    Attorney for Defendants Nassau County Police Department,
    Det. Nicholas Occhino, Lt. Michael McGovern and Nassau
    County Sheriff Edward Reilly
    One West Street
    Mineola, New York 11501

    RYAN & GULINO, P.C.
    BY: JOSEPH J. GULINO, ESQ.
    Attorneys for Defendants Swalm Realty, LLC and Pat Simone
    7 Dey Street Suite 902
    New York, NY 10007

ROBIN HARRIS KING YUHAS FODERA & RICHMAN
BY: LOUIS J. SCHEPP, ESQ.
Attorneys for Defendants Swalm Realty, LLC and Pat Simone
One Battery Park Plaza Suite 3018, 30th Floor
New York, NY 10004-1437

WEXLER, District Judge

This is a civil rights lawsuit commenced pursuant to 42 U.S.C. §1983 ("Section1983") by individual Plaintiff Joseph M. Caporicci ("Plaintiff" or "Caporicci") and corporate Plaintiffs Environmental Services, Ltd., Victory Services Spa. Ltd and Eastern General Contracting Services, Ltd. The complaint alleges civil rights claims sounding in false arrest, malicious prosecution and abuse of process. Named as Defendants are the Police Department of the County of Nassau (the "Nassau County Police"), Nassau County Police Detective Nicholas Occhino ("Occhino"), Nassau County Police Lt. Michael H. McGovern and Edward Reilly, the Sheriff of the County of Nassau ("Sheriff Reilly") (collectively the "County Defendants"). Also named as Defendants are Swalm Street Realty, LLC ("Swalm Street Realty") and individual defendant Pat Simone ("Simone") (collectively the "Individual Defendants"). The civil rights cause of action against the Individual Defendants alleges that they conspired with the named state actors to violate Section 1983.

Plaintiffs' claims arise out of a landlord tenant dispute between Plaintiffs and the Individual Defendants that resulted in the commencement of civil actions as well as the filing of a criminal complaint and the arrest of Caporicci. Presently before the court is the County Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.[1] For the reasons that follow the motion to dismiss is granted . In view of the dismissal of the count defendants, the court will enter a <u>sua sponte</u> dismissal of the conspiracy claims against the Individual Defendants. Finally, the court declines to exercise pendent jurisdiction over any remaining state law claims.

## BACKGROUND

I. <u>Factual Background</u>

The facts set forth below are drawn from Plaintiffs' complaint. The facts are construed in the light most favorable to Plaintiffs, the non-moving parties and assumed at this juncture, to be true. Facts are also drawn from state court judicial records as well as documents either attached to the complaint or incorporated in it by reference. Such documents are in Plaintiffs' possession, were known to Plaintiffs, and relied upon in bringing this lawsuit. They are therefore appropriate to consider in the context of this motion. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002); <u>Stubbs v. Simone</u> 2005 WL 1079286 * (S.D.N.Y. 2005); <u>see</u> <u>also</u> <u>Faulkner v. Verizon Communications, Inc.</u>, 156 F. Supp.2d 384, 391 (S.D.N.Y.2001) (under Fed.R.Evid. 201(b) courts "may take judicial notice of pleadings in other lawsuits attached to the defendants' motion to dismiss ... as a matter of public record" ) (citing cases).

A. <u>The Non-Municipal Parties and Their Business Relationship</u>

Caporicci is the chief executive officer of the corporate plaintiffs. Plaintiffs were lessees, sublessees and/or licensee occupants of a building located at 110 Swalm Street, North Hempstead, New York (the "Premises" or the "Building"). According to Plaintiffs, they operated

---

[1] Plaintiffs' response to the motion is denominated as an opposition to a motion for summary judgment. The court record is clear, however, that Defendants' motion is a Rule 12(b)(6) motion and the court will treat the motion as such.

a lawful and licensed transfer station at the Building. The owner and lessor of the Building is Swalm Street Realty. Defendant Simone is the chief executive officer of Swalm Street Realty. Plaintiffs allege that their lease at the Premises did not terminate until 2011.

B.   Facts Preceding the Arrest of Caporicci

Prior to the arrest forming the basis of Caporicci's civil rights claims, a variety of proceedings concerning the use and condition of the Building took place. Those proceedings include an eviction proceeding instituted by Swalm Street Realty as well as a civil code enforcement proceeding instituted by the Town of North Hempstead. The criminal proceeding that culminated in the arrest forming the basis of Caporicci's civil rights claims was instituted upon the filing of a January 14, 2005 supporting deposition by a Swalm Street Realty representative and subsequent district court felony complaint.

1.   Eviction Proceedings

Eviction proceedings for alleged non-payment of rent were instituted in 2004 by Swalm Street Realty against Defendant Victory Environmental Services, Ltd. ("Victory Environmental"). On October 21, 2004, the parties to that proceeding entered into a stipulation of settlement. Alleging that Victory Environmental defaulted under the terms of the stipulation, Swalm Street Realty filed a petition in the New York State District Court of Nassau County to recover possession of the Premises. On January 3, 2005, pursuant to that petition, New York State District Judge Vito DeStefano signed a warrant of eviction ordering Victory Environmental "and all other persons" to vacate the Premises and put Swalm Street Realty in full possession.

The Premises were apparently not vacated and thereafter, Swalm Street Realty commenced eviction proceedings in New York State Court, before New York State District

Judge David Gross ("Judge Gross"), naming as defendants Victory Services Spa, Ltd. ("Victory Spa"), Joseph Caporicci and unnamed related individuals and companies (denominated in the State Court as "John Jones" and "ABC Corporation") (collectively the "Caporicci Defendants"). On June 23, 2005, Judge Gross ruled on the eviction proceeding. That order noted the earlier stipulation of settlement and Defendants' apparent non-compliance therewith. Judge Gross denied Defendants' motion to dismiss the proceeding based upon the alleged insufficiency of service and ordered the parties to go to trial on the matter on July 8, 2005.[2]

2. Civil Code Enforcement Proceeding by The Town of North Hempstead

On January 19, 2005, Thomas McDonough, an inspector with the Town of North Hempstead ("Inspector McDonough") swore to an information charging Victory Spa with various violations of the Code of the Town of North Hempstead. Those violations are set forth in eight separate counts and allege, essentially, that Victory Spa undertook substantial renovations and alterations of the Building without first obtaining proper permits. Among those alterations were installation of a bathroom and alteration of electrical systems. Victory Spa was also charged with unlawful use of a public street by storage of a truck and a truck scale on the public right of way.

In connection with the alleged code violations, Judge Gross signed an order to show cause with temporary restraining order (the "January TRO"). The January TRO references the

---

[2] The decision of Judge Gross also refers to the filing by Caporicci of a Chapter 7 Petition in Bankruptcy on the day before the eviction was to take place. On September 1, 2005, a Bankruptcy Judge in this District lifted the automatic stay to allow Swalm Street Realty to proceed to trial in state court and to take action to recover possession of the Premises, including the execution of the warrant of eviction issued earlier against Victory Environmental.

affidavit of Inspector McDonough and an affidavit of an Assistant Town Attorney for the Town of North Hempstead. The January TRO required Victory Spa, Swalm Realty LLC and a third corporate entity, Naples & Main St. Transfer, to show cause on January 28, 2005, why an order should not be entered enjoining the defendants from engaging in violations of the code of North Hempstead rendering the Building unsafe for occupancy. The January TRO ordered that pending the determination of the application, defendants would be restrained from operation and/or maintenance of the facility.

3. <u>Criminal Proceedings</u>

In the midst of the civil eviction and code enforcement proceedings described above, the criminal matter that is at the heart of this lawsuit began. Specifically, on January 14, 2005, Curtis Johnson, ("Johnson") a Swalm Street Realty property manager who was responsible for management of the Building, swore to a supporting deposition before Defendant Detective Occhino. Johnson's sworn statement, properly before this court, sought the arrest of Caporicci and sets forth facts concerning the condition of the Building during the period that it was leased to Plaintiffs. The court sets forth those facts here, not as accepted facts about which there is no issue, but simply as the version of facts that were presented to Detective Occhino on January 14, 2005.

Johnson's supporting deposition states that the Building was leased to Victory Environmental and was "intact and in excellent condition." Caporicci is stated to have been a personal guarantor on the lease. According to Johnson, the normal routine between the parties to the lease called for personal collection of the rent at the Building, either by Johnson or a different company representative. The lease for the Building was stated to have provided, <u>inter alia</u>, that

no alterations to the Building were to be made without the written consent of the landlord.

Johnson stated that he observed the Building in March of 2004, at which time, it remained intact and in good condition. However, in June of 2004, when a different employee went to collect the rent, Caporicci was observed to have torn down the south wall of the Building and removed loading dock doors. When confronted by Johnson, Caporicci is alleged to have assured Johnson of his intent to repair the wall within thirty days. Johnson stated that he continued to visit the Building on a monthly basis and to have observed not repair, but continuing damage. He further stated that his company had received no rent payment since June of 2004. Johnson concludes his supporting deposition stating that Caporicci informed him that he could do whatever he wished to the Building and would not be stopped. Caporicci is stated to have destroyed at least 10,000 square feet of a 27,500 square foot building without permission from the owner. Damage the Building was estimated in Johnson's supporting deposition to be over $2 million.

C.  Caporicci's Arrest

On January 25, 2005, Caporicci was arrested by the Defendant Nassau County police officers for the crime of malicious mischief. The crime was alleged to have been committed when Caporicci damaged the Building. The arrest was made after the filing of the Johnson supporting deposition and the District Court Felony Complaint but prior to a final decision on the related civil proceedings. A Nassau County Grand Jury heard the case against Caporicci and on July 7, 2005, and voted "no true bill" as to the crime. Accordingly, the criminal charges against Caporicci were terminated as of July 7, 2005.

D.   Execution of the Warrant of Eviction

As noted, a warrant of eviction was issued by Justice DeStefano of the Nassau County District Court in January of 2005. In October of 2005, Sheriff Reilly executed upon that warrant. Plaintiffs allege that Reilly was prevailed upon by Simone to execute the warrant and carried out such execution, even though he knew that the warrant was "stale."

E.   Allegations Regarding Judge Gross

Plaintiffs' complaint and papers submitted in opposition to the motion to dismiss make several references to criminal proceedings pending against Judge Gross. Each time this Judge is mentioned, Plaintiffs point out that he is currently charged by the Federal Government with money laundering and other crimes. There are no factual allegations that the federal charges against Judge Gross arise out of the factual circumstances in this case.

II.   Plaintiffs' Complaint

Plaintiffs' complaint states causes of action pursuant to Section 1983. The claims against the Nassau County Police Department and the named police officers sound in false arrest and malicious prosecution. Specifically, Plaintiffs allege that Defendants Swalm Street Realty and Pat Simone induced the police officers to arrest Caporicci "without authority of an arrest warrant" and "without probable cause," but upon a felony complaint "with the intent and purpose to coerce and intimidate plaintiff to surrender the lease" to the Building. Caporicci alleges that as a result of the arrest he suffered loss of liberty, degradation and humiliation, damage to his reputation and mental anguish. He seeks actual damages in the amount of $5 million and punitive damages in the amount of $10 million.

The claim against Nassau County Sheriff Edward Reilly ("Reilly") sounds in abuse of

process and stems from Reilly's October 2005 execution of the warrant of eviction signed by Justice DeStefano. Plaintiffs find fault with the warrant execution on the ground that it was not executed upon until ten months after its January 2005 issuance and was therefore "old." Plaintiffs find further fault with the warrant because it was allegedly executed pursuant to an order of Judge Gross, who, as noted, has since become the target of a federal criminal prosecution for money laundering and other crimes. Finally, as to execution of the warrant of eviction, Plaintiffs argue that when executing the warrant, Reilly failed to safeguard Plaintiffs' equipment.

III.  <u>The Motion To Dismiss</u>

The County Defendants move to dismiss the complaint for failure to state a claim. Dismissal of the claims against the police officers is sought on the ground that there was probable cause to arrest Caporicci and, in the alternative, on the ground of qualified immunity. Dismissal of the claim against Sheriff Reilly is sought on the ground of quasi-judicial immunity. Additionally, it is alleged that the Nassau County Police Department, as an arm of the County of Nassau, and not an independent legal entity, and is therefore not a proper defendant in a civil rights lawsuit.

DISCUSSION

I.  <u>General Legal Principles</u>

A.  <u>Standards on Motion to Dismiss</u>

Defendants' motions are to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. A motion to dismiss is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000). When considering a motion to dismiss for failure to state a claim, the court can consider only the facts as set forth in the complaint or documents attached thereto. When considering the facts pled, the court must accept as true all factual allegations in the complaint. All reasonable inferences must be drawn in favor of the non-moving party. Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College, 128 F.3d 59, 63 (2d Cir. 1997). A complaint should not be dismissed simply because a plaintiff is unlikely to succeed on the merits. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). As noted above, it is appropriate for the court to consider judicial records and documents either attached to the complaint or incorporated by reference. Such documents are were known to Plaintiffs and relied upon in bringing this lawsuit. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

II.   False Arrest

   A.   Stating a Claim and Qualified Immunity

The elements of a Section 1983 claim for false arrest are the same as the elements of such a claim under New York state law and are well established. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). A Plaintiff seeking to establish such a claim must show that: (1) defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement and (4) the confinement was not "otherwise privileged." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995); see Danielak v. City of New York, 2005 WL 2347095 *6 (E.D.N.Y. 2005), aff'd. mem. 2006 WL 3780790 (2d Cir. 2006); Coyle v. Coyle, 302 F. Supp.2d 3, 7 (E.D.N.Y. 2004). The final element of the cause of action is negated and no civil rights claim is stated if there was probable cause for the arrest.

Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002) (probable cause is "absolute defense" to claim of false arrest); Gathers v. White, 2007 WL 446755 *4 (E.D.N.Y. 2007); see Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004); Singer, 63 F.3d at 118-19; Danielak, 2005 WL 2347095 at *6.

Probable cause to arrest exists where an officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Caldarola, 298 F.3d at 162; see, e.g., Singer, 63 F.3d at 119; Danielak, 2005 WL 2347095 at *6; Coyle, 302 F. Supp.2d at 7. The probable cause determination requires a court to consider the facts available to the officer at the time of, and immediately prior to, the arrest. Caldarola, 298 F.3d 156.

In the absence of circumstances raising questions regarding witness veracity, the receipt of a sworn complaint from a victim of a crime will establish probable cause. E.g., Caldarola 298 F.3d at 162-63; Singer, 63 F.3d at 119; Danielak, 2005 WL 2347095 at *7. Probable cause to arrest exists where an officer's information is derived from a putative victim of a crime "who it seems reasonable to believe is telling the truth." Caldarola, 298 F.3d at 163. Where an "unquestionably honest citizen comes forward with a report of criminal activity . . . rigorous scrutiny of the basis of his knowledge" is unnecessary. Caldarola, 298 F.3d at 163.

Even if probable cause is not established, a false arrest claim may nonetheless, be subject to dismissal on the basis of qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001), quoting, Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). In a case alleging false arrest, qualified

11

immunity exists where the defendant police officer had "arguable" probable cause to arrest. Caldarola, 298 F.3d at 162. Arguable probable cause exists where it was either objectively reasonable to believe that probable cause existed or officers of reasonable competence could disagree on the existence of probable cause. Escalera, 361 F.3d at 743; see also Caldarola, 298 F.3d at 162 (arguable probable cause exists where officer holds reasonable, albeit mistaken, belief as to probable cause).

B. Disposition of the False Arrest Claims

In this case, even in the context of a motion to dismiss, it is clear that probable cause existed to arrest Caporrici. As noted above, Caporicci was arrested after Officer Occhino received a complaint from Johnson. Johnson's statement was reduced to a sworn, supporting deposition that the parties have properly placed before the court. The allegations set forth in the supporting deposition laid the foundation for the felony complaint that formed the basis for the arrest of Caporicci on January 14, 2005. Johnson was a property manager for the owner of the Building. He was, therefore, a witness and a victim to the criminal allegations being made and there was no reason for the officer to doubt his veracity.

While it is true that the parties were engaged in a landlord/tenant dispute, the existence of such a dispute, even if known to the officer, does not negate probable cause to believe that the crime charged had been committed and was ongoing. Additionally, it matters not that the charges against Caporrici were ultimately dismissed. E.g., Spinks v. Reinstein, 2007 WL 189472 *4 (W.D.N.Y. 2007); see Pierson v. Ray, 386 U.S. 547, 555 (1967) (police officer not liable for false arrest "simply because the innocence of the suspect is later proved"). The probable cause determination focuses on what was known to the officers at the time of the arrest and not the

12

outcome of the criminal proceedings. Under the circumstances here, the court holds that documents properly before the court establish probable cause to arrest Caporicci. The court further holds that even if probable cause did not exist, there can be no question but that arguable probable cause sufficient to support qualified immunity, exists. Specifically, even if the defendant police officers were somehow mistaken as to their belief regarding probable cause, it was certainly reasonable to believe that probable cause existed. In light of the foregoing, the officers are entitled to dismissal of the Section 1983 claims for false arrest.

III. Malicious Prosecution

A. Stating a Claim

To state a Section 1983 claim sounding in malicious prosecution a plaintiff must prove: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) a favorable termination of the proceedings; (3) lack of probable cause to for commencement of the proceeding and (4) that the defendant acted with actual malice. Russell v. Smith, 68 F.3d 33, 35 (2d Cir. 1995); Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997); Spinks, 2007 WL 189472 at *3. Arresting police officers with probable cause to arrest are entitled to a qualified immunity defense as to claims of malicious prosecution. This is because after arrest, the matter is in the hands of the prosecutorial authorities making the decision to continue with the prosecution and outside of police discretion. See Danielak, 2005 WL 2347095 at *9.

B. Disposition of the Malicious Prosecution Claims

As noted, the defendant police officers had probable cause to arrest Caporicci. The court's holding with respect to probable cause as to the claim of false arrest also forecloses a claim for malicious prosecution. Additionally, as police officers, Defendants Occhino and

13

McGovern possessed no authority over the prosecution and are therefore entitled to the defense of qualified immunity from a claim of malicious prosecution. Accordingly, the court dismisses the Section 1983 claims sounding in malicious prosecution. See Gathers, 2007 WL 446755 at * 5.

IV. Claims Against Sheriff Reilly

Plaintiffs' action against Sheriff Reilly stems from the execution of the warrant signed by Justice DeStefano of the New York State District Court in January of 2005 (the "Eviction Warrant"). The Eviction Warrant commands the Sheriff to remove Victory Environmental as well as "all other persons" from the Building and to put the landlord in possession. According to Plaintiffs, Sheriff Reilly failed to take action on the Eviction Warrant for an unexplained period of ten months. It is further alleged that the only reason that Sheriff Reilly executed on that warrant was because he was prevailed upon to do so by Simone. Finally, Plaintiffs further argue that the warrant was defective on its face because it failed to properly identify the tenant of the Building. Considering Plaintiffs' last argument first, it is clear that the Eviction Warrant had no facial defect. It sought the removal of Victory Environmental as well all "all other persons" from the Building. No foul play can be discerned, therefore, on the basis of facial invalidity.

Additionally, the claim against Sheriff Reilly is subject to dismissal on the ground of quasi-judicial immunity. As a Sheriff of Nassau County, Reilly is mandated by law to carry out orders of the court. When relying upon a facially valid warrant, a sheriff is "afforded complete protection from liability for any proper act done in its execution." Tornheim v. Eason, 363 F. Supp.2d 674, 676-77 (S.D.N.Y. 2005), quoting, Iovinella v. Sheriff of Schenectady Co., 413 N.Y.S.2d 497 (3d Dep't 1979). In view of this complete protection and the fact that Sheriff

14

Reilly is sought to be held liable based upon his execution of a facially valid warrant, the action against him must be dismissed on the basis of quasi-judicial immunity. See Maldonado v. New York County Sheriff, 2006 WL 2588911 *3 (S.D.N.Y. 2006) (dismissing civil rights claim against Sheriff on ground of quasi-judicial immunity).

V. Nassau County Police Department as Defendant

Plaintiffs name the Nassau County Police Department (the "Police Department") as a defendant. It is well established that the Police Department is only an administrative arm of the County of Nassau without a separate legal identity. As such, it is not a proper defendant to be named in a lawsuit and is dismissed. See Raphael v. County of Nassau, 387 F. Supp.2d 127, 133 (E.D.N.Y. 2005). The court would consider granting leave to amend the complaint to name Nassau County as a defendant. In light of the holdings that the civil rights claims against the individual police officers and Sheriff Reilly have been dismissed, there can be no claim against the municipal entity and amendment would be futile. See Escalera v. Lunn, 361 F.3d 737, 749 (2d Cir. 2004) (granting summary judgment dismissing county as a defendant where claims against individual defendant police officers dismissed on ground of qualified immunity).

VI. Section 1983 Conspiracy Claims Against Non-State Actors

In addition to the County Defendants, Plaintiffs name Swalm Street Realty and Simone, the Individual Defendants, as liable for taking part in a Section 1983 conspiracy. While these Defendants have not moved to dismiss, the court's dismissal of the Section 1983 claims against the County Defendants leads the court to a discussion of these only remaining federal claims.

Private individuals who are not state actors may be liable under Section 1983 if they have conspired with or engaged in joint activity with state actors. Briscoe v. LaHue, 460 U.S. 325,

15

330 n.7 (1983); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970); <u>Ginsberg v. Healy Car & Truck Leasing, Inc.</u>, 189 F.3d 268, 271 (2d Cir. 1999); <u>Annunziato v. The Gan, Inc.</u>, 744 F.2d 244, 250 (2d Cir. 1984); <u>Puletti v. Patel</u>, 2006 WL 2010809 *6 (E.D.N.Y. 2006); <u>Storck v. Suffolk Cty. Dep't. of Soc. Servs.</u>, 62 F. Supp.2d 927, 940 (E.D.N.Y. 1999). Where, as here, however, all substantive Section 1983 claims against named state actors have been dismissed, claims alleging participation in a civil rights conspiracy must also be dismissed. See <u>Singer</u>, 63 F.3d at 119. This is because a Section 1983 conspiracy action against private individuals will stand "only insofar as the plaintiff can prove the *sine qua non* of a §1983 action: the violation of a federal right." <u>Id</u>.; see <u>Adickes</u>, 398 U.S. 144, 150 (necessary element of civil rights claim is deprivation of a constitutionally protected right). In the absence of such a violation, any Section1983 claim of conspiracy must be dismissed. Accordingly, even though the Individual Defendants have made no motion to dismiss, the court exercises its discretion to enter a <u>sua sponte</u> dismissal of the claims against Defendants Swalm Street Realty and Simone.

VII. <u>Pendent State Claims</u>

In view of the dismissal of all federal claims, the court declines to exercise its discretion to entertain any pendent state claims and, instead, dismisses the complaint in its entirety. <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1996) (where federal claims are dismissed before trial state claims should be dismissed as well); <u>Grace v. Rosenstock</u>, 228 F.3d 40, 55 (2d Cir. 2000).

CONCLUSION

For the reasons set forth above, the court grants the motion of the County Defendants to dismiss the complaint. The court also dismisses the complaint as against individual defendants

16

Swalm Street Realty and Simone. The court declines to exercise pendent jurisdiction over any state claims. Accordingly, the complaint is dismissed in its entirety.

The Clerk of the Court is directed to terminate the motion to dismiss and to close the file in this matter.

SO ORDERED.

/s/
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
March 6, 2007